Goodwin v. Franklin, No. 116-5-11 Cacv (Teachout, J., Mar. 4, 2013)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

| | |
|---|---|
| **SUPERIOR COURT** | **CIVIL DIVISION** |
| **Caledonia Unit** | **Docket No. 116-5-11 Cacv** |

**WAYNE GOODWIN and**
**PAMELA NORRIE,**
    **Plaintiffs**

    **v.**

**FREDERICK G. FRANKLIN,**
    **Defendant**

### Motion for Contempt, filed January 7, 2013
### Reconsideration of Terms of Judgment and Injunction

A final hearing was held on November 14, 2012, and a Decision, including Findings of Fact and Conclusions of Law, was issued on December 20, 2012. Additional time was provided prior to the issuance of a judgment for determination of Plaintiffs' attorneys' fees and costs to be included in the judgment. The Court is now ready to sign a final Judgment as soon as it is submitted by Plaintiff's counsel. A Permanent Injunction was issued on February 14, 2013.

The judgment is for a plaintiff tenant against a defendant landlord who repeatedly and periodically shut off the water supply to the rented residence, and is based primarily on claims for illegal eviction and violation of the warranty of habitability. The history is detailed in the December 20, 2012 Decision. Essentially, over a period of two years, despite injunctive temporary orders throughout the life of the case and multiple findings of contempt of court, resulting in coercive fines and the Defendant's incarceration as a sanction on two occasions, Defendant landlord persists in shutting off the water supply on a periodic and frequent basis.

It is now two months after the Court has issued its decision awarding Plaintiffs $41,200 in damages and approximately $22,000 in fees and costs, and the dynamic between the parties remains unchanged: Defendant Landlord has an inflexible fixed belief that the Tenants are "parasitic maggots" who are not tenants because they do not pay rent and he takes the inconsistent position that there is nothing wrong with the water supply on the one hand and that Tenants are "free loading squatters" on the other. He continues to turn off the water without ever bringing an ejectment action to terminate the tenancy. Meanwhile, Tenants remain in the premises without water, filing motions for contempt, seeking to incarcerate Defendant, and to collect accumulated daily fine amounts.

On January 7, 2013, Plaintiff's fourth Motion for Contempt was filed, and came before the Court for hearing on February 22, 2013. At the hearing, the Court heard evidence that since the final hearing on November 14, 2012, the water supply has been shut off 91 days. Defendant's response to Plaintiff's testimony is the same as it was at

trial: the water is fine and the Tenants are the wrongdoers (which the Court found not credible at trial). The Court questioned both parties about the issue of appropriate remedies because a final judgment is about to be issued, and it appears that the behavior of both parties is likely to continue indefinitely into the future.

Plaintiff argues that he has the right to continue to reside on the premises, as Defendant landlord has never brought a legal action to eject him and his family, and that because the Court has provided injunctive relief and set a fine amount for noncompliance, he is entitled to continue to collect the daily fine amount and seek the sanction of incarceration indefinitely into the future. He argues that it is only after Defendant has spent a few days in jail that the water supply returns for a short period of time. He acknowledged that his plan is to use the money judgment to pursue foreclosure against property owned by Defendant. On February 27, 2013, Plaintiff's counsel filed a memorandum supporting Plaintiff's arguments on remedies.

Defendant's argument is not rationally based. It is simply to deny that he should have any liability at all because he is a law-abiding citizen who pays property taxes while the Tenants, he says, are freeloaders.

The Court finds the Tenant's evidence credible that between November 14, 2012 and February 22, 2013, Plaintiff's residence was without sufficient water for 91 days. This latest motion for contempt, being heard on the eve of final judgment, presents questions of appropriate remedies in this intractable situation. It is clear that enforcement procedures that normally influence the behavior of rational people—stiff fines and time in jail—have not been effective to change Defendant's behavior or change his fixed belief. Should the Court continue to issue judgments for accumulated daily fine amounts, either now, after final decision but before the judgment has issued, or on into the future on an indefinite basis? Should the Court continue in the future to hear post-judgment motions for contempt in which the Plaintiff seeks to incarcerate Defendant?

Plaintiff argues that the Court has provided the equitable remedy of an injunction, and that he should be entitled to ongoing enforcement to obtain the benefit of that remedy. As a practical matter, history has shown that ongoing enforcement in the form of daily fines and period incarceration is not going to result in Plaintiff having the benefit of the intended remedy—a reliable functioning supply of water. Rather, it is going to result in an ever-increasing money judgment based on unpaid ineffective fines and the Court spending time periodically having hearings resulting in Defendant's incarceration for a few days, which will also be ineffective as a long-term solution.

Defendant's response has not been a rational one. However, the effect of continuing the enforcement procedures of fines and periodic incarceration into the future is also not rational. It permits Plaintiff to become enriched at the rate of $75 per day (Plaintiff has requested that the fine amount be increased to $100 per day), which simply enriches Plaintiff without achieving the desired effect. Equitable remedies require striking a fair balance between the interests of the parties. Parties seeking equitable relief must themselves be deserving, or have "clean hands." Plaintiff has been deserving of such relief up to this point, but at some point it is no longer fair for Plaintiff to take

2

advantage of the opportunity to become unduly enriched through accumulated fines, which was not the intended effect of the remedy.

Both the law of contract and the law of equitable remedies place responsibilities on plaintiffs. Contract law requires plaintiffs to comply with a duty to mitigate damages. In this situation, mitigation could involve Plaintiffs either terminating the tenancy and moving elsewhere, or providing an alternative water supply and seeking compensation from Defendant at what would probably be less money than the ongoing accumulation of daily fines.[1] From an equitable remedies perspective, the Plaintiffs already have a judgment against Defendant for over $63,000, which is a substantial sum of money, as well as the opportunity to foreclose against Defendant's property for payment if the judgment becomes final. Further increases in the money judgment would amount to unjust enrichment on Plaintiffs' part, and a forfeiture on Defendant's part, and principles of equity do not support either of those outcomes.

Therefore, the Court finds that Defendant is in contempt of court for shutting off the Plaintiff's water supply for 91 days between November 14, 2012 and February 22, 2013. As a sanction, the Court will add to the judgment the additional sum of 91 x $50 per day, or $4,550.00 (the $75 per day fine only became effective after February 14, 2013). The Court declines, however, to schedule a show cause hearing and consider incarceration. In addition, the Court modifies its decision to remove the prospective $75 daily fine as a coercive sanction.

This does not amount to a decision absolving Defendant of responsibilities and leaving Plaintiff without remedies. First, it is noted that because Defendant continues to fail to provide a reliable water supply, Plaintiff has no obligation to pay rent. The right to continued possession is not terminated, so Plaintiffs have the continued enjoyment of the property without payment of rent, and Defendant has the sanction of being deprived of the economic benefit of his property.

In addition, Plaintiffs may seek other remedies to enforce the injunction, such as a declaration that they may install an independent water supply and seek compensation from Defendant for the cost. There may be other means as well; however, perpetuating the use of fines and incarceration would only result in unjust enrichment and forfeiture under the circumstances of this case if continued beyond the year and a half that such enforcement procedures have been used and shown to be ineffective.

Plaintiff's counsel shall prepare a form of judgment reflecting these terms.

Dated at Saint Johnsbury, Vermont, this 1st day of March, 2013.

_____
Mary Miles Teachout
Superior Court Judge

---

[1] Earlier in the case, a professional plumber estimated that necessary work to improve the water system to preclude shut-offs would cost approximately $1,200.00.